3-18-0369 People of the State of Illinois, Applee v. Ronnie Nelson, Appellant. Good afternoon. Mr. Slaw, you may proceed. Good afternoon, Your Honor. For the record, my name is Terry Slaw. I represent the appellant in this matter, Ronnie B. Nelson. May it please the court and counsel, this case involves my client who was taken into custody on or about July 27th of the year 2017. He was taken into custody for the charges of unlawful possession of a weapon by a felon. The facts in the case will set forth that Mr. Nelson was found in a home in Peoria at 710 South Blaine Street on June 1st of 2017. He had a bullet wound to his foot. Police came on the scene. They recovered some of the casings. There was a warrant issued for Mr. Nelson and to inspect the premises and to recover evidence from the property located at the commonly known address of 812 Matthew, also in Peoria. Again, certain evidence was procured. This time, multiple weapons as the record will state. The testimony of several officers at the jury trial will state that there were weapons found in a duffel bag in the basement of this home. Mr. Nelson, my client, was subsequently taken into custody on or about July the 27th of the year 2017. And that's when the case really started to begin with the issues here whether Mr. Nelson, my client, properly waived his right to counsel and was he or was he not properly admonished under Supreme Court Rule 401A. Additionally, there's allegations in the brief that the state did not prove its case against Mr. Nelson by beyond a reasonable doubt. We call the attention then in the infancy of this case, the record will reflect that Mr. Nelson appeared at a bond hearing before the trial judge early on. And it came up at that time that again, there was on August the 10th of 2017, I believe, that I want to represent myself. The judge continued it for a week, giving Mr. Nelson another chance to decide whether this is what he really wanted to do was to represent himself. Mr. Nelson came back in a week. He had previously discharged the public defender, and he decided that he was going to represent himself. And again, like I previously stated, that's where all the problems start to unravel here. And the first issue that I would like to discuss with the panel here this afternoon is the issue of whether Mr. Nelson, my client, properly was admonished, and it was his waiver, was it or was it not, knowingly, willingly, and intelligently. I believe, especially based on the Wright case, and other matters set forth in the briefs, I believe that you cannot, to get a proper admonishment, you cannot, or the court, the trial court cannot pick and choose. Well, you can have knowingly or willingly, but not intelligently. I think they all fall into play, knowingly, willingly, and intelligently. And in this case, the trial judge, for whatever reason, did not use the word intelligently when the admonishments, and I don't take that to be a de minimis or inadvertent misnomer or misstatement. I believe it's an important mandatory element of a proper admonishment is set forth in the case law. Knowingly and intelligently, I'm going to argue are two different concepts. It is clear in the record is replete with analysis and facts and give and take between Mr. Nelson in the court that he had a third grade education. He didn't understand. For the court, or for the state to argue that this waiver was intelligent, it just doesn't fit the facts of the case. You have a man with a third grade education. The record is replete with, well, I filed the motions, I didn't file motions. The state in its brief, page 11, even concedes that the defendant clearly had a difficult time representing himself. But at the time that the trial court gives the defendant the permission to proceed pro se, during the initial bond hearing and then a week or so later when he comes back and he says, I do want to proceed pro se, I want to exercise my right. One of those proceedings would have given the trial court any indication that he lacked the intelligence to proceed. I believe there was information in pre-sentence investigations that Mr. Nelson had a substance abuse problem. I think there are enough avenues here and with the court being able to observe this defendant, could the court, even the court could have ordered an evaluation, a psychological evaluation, they chose not to do it. I just don't believe that the trial court, it could have gone the extra step. I've been a practitioner 38 years. I understand these arraignments, bond hearings are fast, there's multiple defendants. I'm not sure whether this one was on television screen and the client was in custody. I don't know the protocol in Peoria County. But the issue is, you had an individual here with prior issues, substance abuse problems, third grade education. For the trial court, and we don't know why the trial court did not admonish intelligently, but they didn't. And if the court did not admonish intelligent because the trial court did not believe the phrase or the word intelligent is part of the equation, then I argue that the admonishment was insufficient and as a basis for a reversal is not a proper admonishment under 401A. And I've not struggled with this, but I do believe that the word intelligent can't be lumped in with knowingly. And the court needed to admonish him in the court for whatever reason did not. And therefore, it's my argument before this court, that the admonishments under 401A were not proper, and therefore, basis for a reversal for ineffective for not being properly admonished. Is there any case law to that effect? I did not find any case law that defined the difference between knowingly and intelligently, but the cases that I found with Wright, and that they were listed in my brief, they all were the three, the three words, knowingly, intelligently. I understand that, but these waiver of counsels are catch-22s for the trial court judges, because if the trial court had refused to allow him to represent himself, I think you might be arguing the opposite, that his conviction should be reversed because knowing is intelligent. There was a case out of Lake County, the trial judge, Judge Mark Leavitt, actually came out of the Cook County Public Defender's Office, and he, I forget the name of the case, it's out of the Second District, where he insisted that the defendant have counsel, and it was a murder case, and because he insisted, it was reversed and remanded back to the trial court. So that's part of the court's position. I do understand that it is a catch-22. I'm not debating that with the court, but I'm asking that the court hold this trial judge or all trial judges to a standard as set forth in the case law, knowing, intelligent, and willfully, and if you miss one, I think it makes it fatal. Okay. I don't want to waylay your argument too much. Please understand, I may not entirely agree with your argument. I understand, Your Honor. That's why we're here. I understand. All right. Please proceed. Okay. So, question, wasn't 401 complied with by the trial judge? My argument, there was certainly a substantial, there was an attempt. Wasn't the language of 401 complied with? Except the leaving out the word intelligently, I would say. I believe the judge made an attempt to do that. But I, again, and I'm repeating myself ad nauseum here, I do believe that the proper admonishment, isn't that correct? I don't believe if you leave out the word intelligent, I think it's fatal. That's my opinion.  Mr. Slott, I have a question. I have a question regarding the other issue, actually, regarding the search warrant or the sufficiency of the evidence argument. I'm wondering whether there was any indication that this, I don't know if it was a resident, sounds like it was a business or maybe you said about the 812 Matthew. What was Mr. Nelson's connection to 812 Matthew? The only connection that I could see was there was, he was tending to a dog. I don't believe it was ever established that it was his abode. The unlawful use of weapons statute specifically mentions an abode. He may have been there. I mean, he was found there, but whether that was where his abode or residence, never proven. And I think that the charge fails on that point. And additionally, the connection of the weapons were found in a duffel bag in the basement, certainly not within arms distance or any real realistic distance of Mr. Nelson. I don't believe that the element of possession was properly proved, but as I set forth in my brief, it never was established that the 812 Matthews address was where Mr. Nelson resided. He may have been there as a guest to take care of a dog. Who knows why those bags were there? Whose bags were they? Just because Nelson was there doesn't mean one, that it was either in constructive or even actual possession of Mr. Nelson, no testimony to that. And we don't know whether the abode, whether he even resided there. Wasn't there some pill bottles with his name on it inside the residence? Yes, but no, no address. But, but they were his pill bottles with his name on it. That doesn't mean he lived there, in my opinion. But yes, there were pill bottles with his name on it. That's correct. But, Your Honor, it's my position on behalf of my client that they may be a pill bottle, but there was no address to tie the pills to this abode. I mean, if they're tied in because they were there. They were present there. Maybe he, you know, he could have had them. He brought them there with him. I mean, he wasn't charged with controlled possession of a controlled substance. So that's not an issue whether they were rightfully on his person, but the fact that they were there, and he was tending to a dog doesn't mean that it was his home or his abode as set forth by statute. And I think I was mentioned that was in the record, the about the pills are the record on pages 159 and 162 and on my brief, page 31, but Mr. Sly. Yes, your time is up at this point you do have five minutes for rebuttal. Very well, thank you. Thank you, Your Honors. Unless anyone else has any other questions for him. No. Okay. Thank you, Mr Nicolosi you may proceed. Good afternoon, may it please the court and counsel slaw My name is Justin Nicolosi I represent the state. In this matter, the state submits that on issue one, that the defendants waiver of counsel was proper. First off, I state my brief that not only did the trial judge substantially comply with rule 401 a in this case, the state would argue that he strictly complied with the rule defendant was clearly made known of the nature of the charges against him. The defendant was clearly informed of the possible penalty arranges that he faced on those charges and the defendant was also informed that he had the right to counsel. And if he couldn't afford one, one would be provided at no charge to him. That was crystal clear laid out by the judge, the defendant indicated that he understood every one of those items. There's really no debate as to whether or not the judge complied with rule 401 a, of course, there's, it's been well settled that that compliance with 401 a and establishing that the defendant understood all of those items means that there has been a valid waiver of counsel and the state submits that in this case there has been. But even if you look further in the record to, to determine whether or not this, this waiver was valid that the judge went above and beyond just the substance of 401 a that the judge even informed the defendant that he'd be up against an experienced attorney and he'd be at a disadvantage. Defendant said he understood that the judge said that he, the defendant couldn't proceed with the trial and then complain later that he should have had a lawyer defendant said he understood that the judge told the defendant he wouldn't get any special favors. The judge just talked about his level of education and defendant actually indicated he made it to the 12th grade but didn't graduate so I know there's some issue whether he had a third grade education but it clearly appears he made it farther in school than just third grade. So the judge really flushed out a lot of different areas to ensure that defendant knew what he was getting into and and made sure that this was defendants, a decision and within that with that in mind. Counsel's law obviously talked for most of the time about whether or not this was an intelligent way where he obviously is conceding that it's knowing and willful, but he is questioning whether it was intelligent just because the court did not use that word. State submits that the what should it be important of course is the, the totality of the discussion and the conversation between the court and defendant to know this court can use that transcript to determine that this wasn't it was an intelligent waiver, regardless of whether the court actually use that word. And again, the state submits that it was very clear that the defendants waiver was was knowing willful and intelligently made. He was given all the possible information that the Supreme Court rules require, and again he went above and beyond to make sure that defendant knew what he was doing and made sure that this is what he wanted to do. He knew what the charges he faced the penalties, all of that I think that that is part of the intelligence that is required by by case law. So, again, the state submits that not only the court, strictly compared substantially comply with rule for when a he strictly complied with it. And in addition to that the record shows that the defendants waiver was knowing a willful and intelligently made. So it was a proper regard to that, as I understand it. It is correct isn't it that the pill containers with his name on it were found in the basement where the duffel bag was correct, where the weapons were. Yes. So they were all found in the basement. Now he was seen exiting that location. Before they at one point before they executed the warrant right. Correct. Yeah, yes, Your Honor. Yeah, as I argued my brief the I believe is the defendant himself that kind of ties all the evidence together in this case on June 1 law enforcement and paramedics responded to the scene of a shooting. They found defendant their bullet wound is right foot. And they also found a shell casing there. Fast forward two weeks they get a search warrant to that the residents at 812 Matthew. They see defendant out front, then he leaves, they try to execute the warrant, and they had to bring the defendant back to secure the dog that clearly wasn't a problem the defendant, obviously, did that, according to the testimony. And they in executing the warrant they found the black duffel bag with three guns ammunition and they found the pill bottles with defendants name on it. After they tested those those weapons and compared the testing of weapons to the shell casing found at the scene of the shooting where defendant was shot. They were able to confirm that the Lawson 380 was used that was found in the duffel bag in the basement where his pill bottles were, that was the gun that was used to fire the shot. In terms of establishing that this is his residence or place of vote, the pill bottles when I watched the video they have his name on them, they have an address, and it's not 812 Matthew. And I know that the state doesn't enter the address on these pill bottles they say that the pill bottles are his they have his name on them which I could clearly see in the video but I could also clearly see another address. What did they use to establish that this was his place of abode, this is where he resided. The information that I that I just provided your honors I but the fact that he is he's clearly coming and going from this address, and that he helped secure the dog there and that the fact that he used this gun, probably to shoot himself in the foot on accident, then where does he go after he does that and where does he keep these guns and the the pill bottles where he, you know, used to probably treat his symptoms from those wounds, he puts them in the basement at 812. So that was that was the information. Anyone ever see him with a duffel bag I mean they when they make the accessory that they see him coming and going, coming and going is anyone, did they ever say, we saw him with this duffel bag. No, Your Honor, but but again, the, sorry, the court used the state use the circumstantial evidence tying defendant to this record to this residence in order to to establish that this was his abode for purposes of this, this particular charge and the state jury was the trier of fact here heard all the evidence, and one of the elements of this offense is to establish that this is his resident or his place of abode and you know do they have any thing that, other than the fact that he is in and out of this residence clothing. Any, any bills or anything with that address and his name on them. I, it seems that that isn't. This is a knowingly possess honor about his person or on his land or his own abode or fixed place of business. So you say that, as long as they had that these pill bottles, and a gun that was used to shoot him at yet another address that that that that's enough to establish that this is his own abode. Well, Your Honor, it was certainly sufficient for the jury. The jury heard. Again, they obviously pieced all this together he shot himself with this gun, and where did he bring it to he brought it to the basement. I think it's reasonable for a jury to assume or any trier of fact to assume that he brought this gun to stash at the place where he lived. And again, the fact that pills bought the pill bottles were there this man just shot himself probably in the probably shot up in the foot, but if there and if we have demonstrated I mean if we have a video that shows that that's not the address listed on those two bottles. Is that problematic to the state's evidence or not I don't think so Your Honor I went to law school in Michigan and I had an Illinois license plate on my car I never changed it I had I never changed my address while I had an apartment for two and a half years, everything was still my, my Illinois information and I clearly lived in Michigan so I think, you know, using those principles any rational trier of fact, could put themselves in those positions and just because it has a different average address on a pill bottle does not mean that he does not live there. So, so in this two week period when they originally went to that house is because people heard a shot right. Yes. Okay, and that was at that residence. No, is that the first right the event where he was shot on June 1 was at a different residence I gave me but that that was one that was not at Matthew that was that a blame I don't remember what the first address was but a different location. Yes, yes. But it's the same person and then the, the weapon that was used for the shot was then found in the basement. Yes, at the different residents so the state's position was that defendant shot himself at a different place, place where he did not live, and then brought the gun back with and put it in the duffel bag with his other guns and the pills he eventually obtained, probably to treat his symptoms from his injuries. What about the dog. The state submits that's evidence that the defendant live there as well he obviously had access to the residents and had the ability to secure the dog and he could clearly come and go, as he pleased and that was more evidence that the defendant. Totally secured. I don't know the answer to that I don't, I don't remember the answer to that your honor. Probably put in a cage or something or a crate I don't I don't know exactly what happened to that dog. I don't I don't know. Should I know that I don't know if I should know that I have no further questions. I was wondering if you had the answer that this is a question. If there any other questions I'd be happy to answer them if not, the state urges that this court affirms the, the defendants conviction and convictions and sentences in this case. Thank you, Mr. Nicolosi, Mr. For rebuttal. I'm sorry, Mr slaw. Our administrator needs to take you off the mute. If it's a click. There you go. Your five minutes. I'll figure out the technology eventually. What happened to your engine. It was, it was our. So, I don't know what happened to the dog either your honor. But one of the, the points that I did want to raise is the ineffectiveness of counsel what concerns me is that the record shows that the public defender was appointed. After the letter that was written by a family member, and the court gave the public defender time to order transcript. And that was ordered a bill honor about the 29th of March, and when, when the case came for the argument on the motion on June It was opined by this by the public defender initially wave raised the issue of whether there was a proper admonishment and proper waiver of counsel. And March 29, but then reappeared before the court. They did well, you know, I, I reconsidered that theory, but he did admit that he never really read the transcripts. So, I just wanted to express to this court that for this attorney to, with his experience, advised the trial court upon retention that there may have been an issue with proper waiver got got a continuance was had the ability and procured the transcript. He had a couple of months, then it appears on June the eighth and says, well, I changed my mind and going to be withdrawing that legal theory. And by the way, I really didn't look at the transcript. I would like to argue to this court, as I set forth and stand on on the brief that that's ineffective, because if he initially raised the issue had the transcript in his hands acknowledges he didn't really read it and then withdraws his theory anyway. I believe that to be problematic. And he had the time. He was given the time by the trial judge to procure the transcript to read it. And for whatever reason, didn't get to it chose not to do it. And instead of asking for another extension withdrew the legal theory. And I believe that to be problematic and I just wanted to express this express that to the panel this afternoon. Are there any other questions for Mr saw any questions for me. Seeing none. I'd like to thank both of you for your arguments here today. This matter will be taken under advisement and a written decision will be issued to you as soon as possible. With that, the standard recess until the next case.